## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

RUTHERFORD CONTROLS INT'L CORP.  )
(a Canadian corporation), *et al.*,       )
                                   )
       Plaintiffs,          )
                                   )
v.                               )   Civil Action No. 3:08CV369-HEH
                                   )
                                   )
ALARM CONTROLS CORP., *et al.*,      )
                                   )
       Defendants.         )

### MEMORANDUM OPINION
### (Claim Construction)

       This is a patent infringement action filed by Rutherford Controls International

Corporation, a Canadian corporation, and Rutherford Controls International Corporation,

a Virginia corporation (collectively "Rutherford") against Defendants Harco Enterprise

Co. Ltd. ("Harco"), Vanguard Security Engineering Corporation, Ltd. ("Vanguard"), and

Security Door Controls, Inc. ("Security Door").[1] Both Harco and Security Door have also

filed a counterclaim seeking a declaratory judgment of invalidity and non-infringement.

All three patents-in-suit involve electronic door locking and unlocking mechanisms.  The

case is before the Court for construction of disputed claim terms.  All parties have filed

detailed memoranda of law in support of their respective positions, and the Court

conducted a claim construction hearing on July 13, 2009.  The parties were also afforded

---

[1]The Complaint also named Defendants Alarm Controls Corporation and Fast Access
Security Corporation.  These defendants were dismissed on September 5, 2008.

an opportunity to file post-hearing memoranda.  Upon careful consideration of the entire record, the Court's construction of the disputed terms follows.

## I. Background

There are three patents-in-suit.  Plaintiffs' claim of infringement and Harco's counterclaim involve two patents:  United States Patent Nos. 6,874,830 ("the '830 patent") and 7,144,053 ("the '053 patent") (collectively "the Rutherford patents," formally entitled "Electric Strike Assembly").  Both the '830 and the '053 patents describe electronic door locking and unlocking mechanisms, commonly referred to as "electric strikes."  Electric strikes, also known as electric door openers, electric releases, and electric release strikes, are frequently used to control access to buildings or areas.  The articulated object of the '830 and '053 inventions is to provide an improved electric strike, which among other features, provides rapid and easy selection between fail-safe (open) and fail-secure (locked) modes.  A significant characteristic of both of these patents is that they feature a design wherein the strike field is reversible, or in other words, can be switched between fail-safe and fail-secure with a single act operable from outside the housing.

Rutherford also seeks a declaratory judgment of non-infringement of U.S. Patent No. 5,429,399 ("the '399 patent") which has been assigned to Defendant Security Door.  The '399 patent relates to electromagnetic door locks that provide for delayed egress.  The patent describes an invention that allows doors to be opened after a preset delay in

time and covers a system wherein the exact period of delay remaining is made known through a countdown feature displayed near the door.

The '830 patent was issued by the United States Patent and Trademark Office on April 5, 2005. Rutherford (Canada) owns the '830 patent by assignment. The '053 patent was issued on December 5, 2006 and is also assigned to Rutherford (Canada). The '053 patent is a continuation of the '830 patent, both having essentially the same specifications with different claims.

The '399 patent, on which Rutherford seeks declaratory judgment of non-infringement, was issued by the Patent and Trademark Office on July 4, 1995. This patent has been assigned to Security Door. It describes a security system for use on doors which have an electrically operated door locking mechanism. In the preamble to the patent's abstract, it discloses a system "operative to provide a preset egress time delay following an effort to exit through the controlled door before actuating the door locking mechanism to unlock the door and allow egress. During the egress time delay, the system provides a visual input of the time remaining until the door locking mechanism will unlock the door to allow egress or access therethrough." ('399 patent, Abstract.) The preferred embodiment also utilizes a speech synthesizer to inform individuals of the delay.

The parties contend that there are ten terms contained in the three patents-in-suit that require construction by the Court.

## II. Statement of the Law

Claim construction is a question of law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Generally, claim terms are given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. Construing the disputed terms begins with a review of the intrinsic evidence, including the language of the disputed claim, the other claims, the specification, and the prosecution history. *Id. See also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). Courts may also consider extrinsic evidence, which includes all other evidence, such as expert testimony, dictionary, and learned treatises. *Phillips*, 415 F.3d at 1317.

The specification has been characterized as the "single best guide to the meaning of a disputed term" and is usually "dispositive." *Id.* at 1315; *see United States v. Adams*, 383 U.S. 39, 49 (1966) ("[i]t is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention."). Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158

4

F.3d 1243, 1250 (Fed. Cir. 1998)). "A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'" *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)). "[R]eferences to a preferred embodiment, such as those often present in a specification, are not claim limitations." *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988).

Although considered less reliable than intrinsic evidence, extrinsic evidence, including dictionaries and expert testimony, can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, but it should not be used to support a construction that contradicts the intrinsic evidence. *Phillips*, 415 F.3d at 1318-19, 1322-23. If possible, claim terms should be construed in a manner that supports the patent's validity against the prior art. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999).

### III. Analysis

With the above principles in mind, the Court will now turn to the terms in dispute.

A.    The '053 patent – electric door locking mechanism.

1.    "Slot"

This term is an element of claim 1 of the '053 patent, wherein its states "a holder slidably arranged in the housing and comprising a slot defined therein." ('053 patent, col. 8, lines 36-37.)

5

Both Security Door and Rutherford propose dictionary definitions. Rutherford urges the Court to adopt the construction of "narrow opening." Security Door suggests "narrow or elongated opening, and not a circular hole." Neither Vanguard nor Harco offered a proposed definition.

While the proposed definitions appear to be similar at first glance, the plaintiff contends that a slot is distinct from a hole. Careful examination of the claims and specifications yields no indication that the inventor intended to give the term "slot" any special meaning. In support of its proposed construction, Security Door points out that throughout the specification, the inventor referred to a specific type of structure when using the term "slot" and referred to a very different configuration when employing the term "hole." Security Door asserts that "the notion that a slot is the same thing as a hole contravenes the common and universally recognized meanings of these terms." (Security Door's Am. Reply Claim Const. Br. p.15.)

Drawing on the same resources utilized by the parties, the Court consulted a number of dictionaries. Harper Collins Webster's Dictionary, 2003 Edition, defines "slot" as "narrow hole or depression." Merriam-Webster Online Dictionary, 2009 Edition, adopts the definition "a narrow opening or groove." Merrian-Webster.com, http://www.merriam-webster.com (last visited Aug. 3, 2009). Dictionary.com, 2009, provides a wider, but not dissimilar definition, "a narrow, elongated depression, groove, notch, slit, or aperture, esp. a narrow opening for receiving or emitting something, as a

6

coin or a letter." Dictionary.com, http://www.dictionary.com (last visited Aug. 3, 2009).

The Court therefore concludes that the ordinary and customary meaning of the claim term "slot" to a person of ordinary skill in the art at the time of the invention would be "narrow opening." This definition is consistent with all dictionaries consulted, the specifications, and the preferred embodiment.

        2.     "Projection"

This term is also an element of claim 1 of the '053 patent. The pertinent phrase within the claim is "wherein the means for selecting comprises a projection extending therefrom and fitting into the slot of the holder." (Col. 8, lines 43-45.)

In this context, Rutherford proposes the construction, "portion of the mode selector that fits into a slot in the holder." Security Door, on the other hand, suggests "a pin moveable within a slot."

Rutherford contends that the definition urged by Security Door improperly limits construction of the term at issue to a single embodiment. Directing the Court's attention to column 5, lines 37-38 of the '053 patent, Rutherford rejoins that the specification describes a mode selector with a slotted head and a projection that fits into the slot in the holder. Security Door counters that all the preferred embodiments refer to a pin moveable within the slot. In Security Door's view, they uniformly portray a pin fitting into a slot in the holder that serves to keep the mode selector in whichever position is selected. Harco and Vanguard take no position on this claim term.

While it would appear that each of the preferred embodiments included in the '053 patent refer to a pin moveable within the slot, neither the specifications nor the claims appear to include such a limitation. The United States Court of Appeals for the Federal Circuit has consistently counseled district courts against importing claim limitations from illustrative preferred embodiments unless the claim is drafted in a means-plus-function format. *See Laitram Corp.*, 863 F.2d at 865; *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008).

The limitation proposed by Security Door, namely that the means for selecting comprises a "pin", is not supported by either the claim language or specifications. The Court will therefore construe the term "projection" to mean "portion of the mode selector that fits into a slot in the holder."

### 3.   "Slotted head"

Claim 6 of the '053 patent recites, "[t]he electric strike of claim 1, wherein the means for selecting further comprises a slotted head projecting through an aperture defined in the housing and accessible from outside the housing to be operable therefrom." (Col. 9, lines 4-7.) This term also appears in several other claims of the '053 patent.

Rutherford suggests that this term be defined as "a head containing one or more slots." Security Door proposes the construction, "a head that is manipulated by a single blade, standard screwdriver." Harco and Vanguard offer no suggested definition.

The term "slotted head" is not defined in the specification or described in the

claims. Furthermore, nothing within the patent or the testimony adduced at the evidentiary hearing would suggest the limitation advanced by Security Door. As Rutherford aptly observes, "a slotted head could be manipulated by any number of implements or tools." (Rutherford's Rebuttal Claim Const. Br. pp. 14-15)  The term "slotted head" is neither a term of art nor a concept intrinsic to the '053 patent. It will therefore be given its ordinary and customary meaning, namely "a head containing one or more slots."

    4. "Means for selecting"

  The phrase at issue is contained in claims 21 and 22 of the '053 patent. Claim 21 reads, "[t]he electric strike of claim 16, wherein the means for selecting further comprises a slotted head projecting through an aperture defined in the housing and accessible from outside the housing to be operable therefrom." (Col. 10, lines 22-25.) Claim 22 states, "[t]he electric strike of claim 21, wherein the means for selecting further comprises an annular member connecting the slotted head to the projection." (Col. 10, lines 26-28.)

  The parties take widely divergent positions with respect to this claim term. Security Door asserts that it is too unclear and indefinite to enable a person skilled in the field of the invention to reasonably understand the claim when read in the context of the specification. Security Door therefore offers no proposed construction.

  Rutherford, on the other hand, adopts the position that means for selecting would be almost self-evident to one of ordinary skill in the art. They argue that it refers to the

means for selecting a mode of the electric strike. Because the term is written in a means-plus-function format, it must be construed to cover the corresponding structure described in the specifications and equivalents. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1207-09 (Fed. Cir. 2002). In Rutherford's view, this term is closely aligned with the term "two-position mode selector contained in the '830 patent." Rutherford has therefore proposed identical constructions for both terms. Harco and Vanguard take no position on this term.

On close examination, the Court is of the opinion that a person of ordinary skill in the art would reasonably understand the meaning of "means for selecting" when read in the context of the specification. *See Marley Mouldings, Ltd. v. Mikron Indus., Inc.*, 417 F.3d 1356, 1359 (Fed. Cir. 2005). The construction proposed by Rutherford is consistent with the claim language and the corresponding structure, and will be adopted by the Court. The Court therefore construes the term "means for selecting" as "a single mechanism that selects between two modes."

5.    "Means for selecting a mode of the electric strike"

The disputed term "means for selecting a mode of the electric strike" appears in claim 1 of the '053 patent. Specifically, the claim recites "means for selecting a mode of the electric strike, wherein the means for selecting is operable from outside the housing, and the means for selecting is configured to allow the electric strike to operate in a first mode when the means for selecting is in a first selector position, and the means for

10

selecting is configured to allow the electric strike to operate in a second mode when the means for selecting is in a second selector position; . . . ." (Col. 8, lines 28-35.)

Rutherford urges the Court to adopt the construction "a single mechanism that selects between two modes." Security Door recommends "a selector that only requires rotation to change modes." In the alternative, Security Door offers "a selector that only requires rotation to change modes or by sliding the selector with no other manual operation." Defendants Vanguard and Harco have chosen not to address this claim term.

The claim term at issue is in the means-plus-function format and therefore, pursuant to 35 U.S.C. § 112, must be construed to cover the corresponding structure described in specification and equivalence thereof. *See Micro Chem., Inc. v. Great Plains Chem., Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

In defense of its position, Rutherford points out that this claim element is complementary to the "two-position mode selector" element found in claim 4 of the '053 patent. Rutherford further contends that Security Door's construction does not cover all the embodiments, or the equivalence thereof, as required by law. Security Door counters that its construction encompasses the structure in the specification, unlike Rutherford's proposed definition which contains no structure.

Instructive in construing this term is the fact that both Security Door and Rutherford are proposing identical constructions for this claim term and the "two-position mode selector" found in claims 1 and 12 of the '830 patent. Vanguard and Harco offer a

11

different definition of "two-position mode selector" which will be discussed below in connection with that term.

Central to Security Door's proposed construction of "means for selecting a mode of the electric strike" is its contention that the Court's construction of the term "two-position mode selector" must include rotatability to allow for changing of the strike's modes between fail-safe and fail-secure. They maintain that this is the only arrangement in the preferred embodiment and objects to any broader construction which encompasses other types of mode selection. Security Door further contends that Rutherford's proposal stakes its boundaries so wide that it would read on prior art. Rutherford rejoins that the claims do not mention rotation, sliding, or an absence of other manual operations. Rutherford further maintains that the defendants' construction of "two-position mode selector" improperly relies solely on the preferred embodiments.

Conspicuous in the detailed description contained in the '053 patent is the disclosure that "[t]he two-position mode selector is a key feature of the invention, in that it provides a very simple means for the installer to switcher between modes, simply by rotating the selector." ('053 patent, col. 5, lines 53-55.) The preferred embodiments described in the '053 patent, in addition to referring to a rotating mechanism, also disclose "a small button, slidable between two positions" (col. 7, lines 52-53), and alternatively, "a small lever, pivotable between two positions." (Col. 7, line 49.)

On close review, the Court concurs with Security Door that Rutherford's proposed

12

construction is too narrow to embrace the corresponding structure disclosed in the specification. Security Door's recommendation, on the other hand, includes the extraneous element "no other manual operation."

A critical element of this invention is the ease of selecting the first and second modes of the electric strike. In the Court's view, Rutherford's minimalist construction does not squarely correspond to the structure disclosed in the specification and preferred embodiments as required. The Court will therefore fashion a construction which adopts elements of both Rutherford and Security Door's proposals, specifically "a mechanism that requires only a single movement to change modes, as by rotation or sliding a button."

6.    "Means for allowing"

This phrase appears several times in claim 16 of the '053 patent. Claim 16 reads in pertinent part,

> means for allowing the electric strike to operate in a first mode when the means for allowing is in a first selector position and to operate in a second mode when the means for allowing is in a second selector position, wherein the means for allowing is operable from outside a housing of the electric strike; and . . . wherein the means for allowing is configured to selectively move the holder from a first holder position to a second holder position when the means for allowing moves from the first selector position to the second selector position . . . . (Col. 9, lines 32-37, 40-44.)

Both Rutherford and Security Door have indicated that this means-plus-function claim term and the term "means for selecting a mode of the electric strike," defined above, should be construed similarly. Vanguard and Harco have offered no position on

13

this term. The Court will therefore adopt the construction discussed above for "means for selecting a mode of the electric strike."

      7.    "Two-position mode selector"

The term "two-position mode selector" is contained in both claim 4 of the '053 patent and claims 1 and 12 of the '830 patent. Claim 4 of the '053 patent reads, "[t]he electric strike of claim 1, wherein the means for selecting comprises a two-position mode selector." (Col. 8, lines 52-53.) In the '830 patent, claim 1 recites in pertinent part, "two-position mode selector operable from outside said housing for slidably moving said holder between a fail-secure and a fail-safe position . . . ." ('830 patent, col. 8, 42-43.) Similar language is found in claim 12 of the '830 patent, "two-position mode selector operable from outside the housing, wherein the two-position mode selector is configured to selectively move the holder from a first position to a second position and from the second position to the first position . . . ." (Col. 10, lines 15-19.)

Again, Rutherford and Security Door suggest that the Court adopt the same construction for this term as given previously to "means for selecting a mode of electric strike" and "means for allowing." Vanguard, on the other hand, suggests a slightly different construction than adopted by the Court, namely "a member which switches modes simply by rotating the selector or simply by sliding the selector with no other manual operation." Like Security Door, Vanguard and Harco rely on elements of the specific embodiments of the '830 and '053 patents along with language in the

14

specifications to link the claim term to the corresponding structure.  In the final analysis,

Vanguard's argument, while helpful, does not change the Court's previously articulated

position.  The Court will therefore define this claim term consistent with its construction

of "means for selecting a mode of electric strike" and "means for allowing" described

above.

B.     The '830 patent – electric door locking mechanism or assembly.

1.     "Cam"

The term "cam," which is undefined in the patent specification, appears in claim 6

of the '830 patent.  Claim 6 reads in pertinent part, "when a latch bolt is present in said

strike, to thereby rotate said latch monitor lever arm from a home position to which it is

biased, said rotation being a cam extending from said latch monitor lever arm into gradual

contact with a switch button on a microswitch . . . ." ('830 patent, col. 9, lines 6-11.)

Because the claim term "cam" is undefined by the inventor, all three parties have

fashioned their proposed construction by tailoring dictionary definitions to the

specifications and preferred embodiments contained in the patent.  Rutherford

recommends "a projecting part of a wheel or other moving piece so shaped as to give

alternative or variable motion to another piece against which it acts."  Security Door

advocates "a disk or cylinder having an irregular shape such that its motion, usually

rotary, gives to a part or parts in contact with it a specific rocking or reciprocating

motion."  Vanguard offers "an eccentric wheel mounted on a rotating shaft and used to

15

produce variable or reciprocating motion in another engaged or contacted part."

Rutherford's proposed definition is drawn verbatim from Dictionary.com.

Merriam-Webster Online Dictionary defines "cam" as "a rotating or sliding piece (as an

eccentric wheel or cylinder with an irregular shape) in a mechanical linkage used

especially in transforming rotary motion into linear motion or vice versa." Merriam-

Webster.com, http://merriam-webster (last visited Aug. 3, 2009).

While all three defendants put forward different phraseology, the words have

similar import.  Therefore, within the context of the claims and specifications of the '830

patent, the Court will define the term "cam" as "a cylinder or eccentric wheel having an

irregular form such that its motion, usually rotary, gives to a part or parts in contact with

it a specific rocking or reciprocating motion."

> 2.     "Means for biasing"

This term, in means-plus-function format, is contained in claims 3, 4, and 5 of the

'830 patent. The term appears to be used similarly in each claim. The language of claim

3 is representative of its usage. Claim 3 reads, "[a]n electric strike as in claim 1, further

comprising means for biasing said mode selector into whichever of said two positions is

selected." (Col. 8, lines 60-62.) This term clearly contemplates a structure which holds

the movable parts in a selected position.

Rutherford prefers "a spring, notches, ball-spring detents, or the like, to bias the

mode selector in one of its two positions, and equivalents thereof." Security Door

suggests alternatively, "a spring to push the mode selector to one of its two end positions or a spring to push the mode selector to one of its two positions or notches or ball-spring detents engagable by the movable selector to hold the movable selector in one of two end positions." Vanguard and Harco submit a more succinct proposal, "active biasing force."

The Court is mindful that this term is in a means-plus-function format and therefore must be construed to cover the corresponding structure, material, or acts described in the specification or equivalents thereof.

The Court has reviewed those portions of the preferred embodiment cited by the parties, namely the '830 patent, column 5, lines 56-64, and column 7, lines 40-43.

While the Court is of the opinion that Security Door's proposed construction hues closely to the corresponding structure, it lacks an important element contained in the Rutherford proposal. Therefore, the Court will construe "means for biasing" as "a spring to push the mode selector to one of its two positions, notches, or ball-spring detents, or the like, engagable by the movable selector to hold the movable selector in one of two end positions, and equivalents thereof." While specifications and preferred embodiments appear to contemplate a spring, notch, or ball-spring detent, there is nothing in the specifications or preferred embodiment which would preclude a similar structure performing an identical function.

C.    <u>The '399 patent – electronic delayed egress locking system.</u>

    1.    "Means for providing an indication"

17

This is the only claim term in dispute with respect to the '399 patent. This phrase, in means-plus-function format, is found in column 10, line 65 of the '399 patent. The pertinent portion of claim 1 recites, "means for providing an indication of the time remaining until said electrically operated door locking mechanism will go from said locked condition to said unlocked condition." ('399 patent, col. 10, lines 65-68.)

The construction of this phrase proposed by Security Door closely resembles the language recommended by Rutherford. There are, however, two critical distinctions. Security Door includes the language "light emitting" to modify visual output. Rutherford's proposed interpretation contains a "countdown" feature. Harco and Vanguard offer no suggested construction.

To bolster its proposed construction, Security Door draws the Court's attention to several portions of the preferred embodiment. In column 7, lines 10-44, the text refers in several places to providing information as to the time remaining until the doors unlock.

In arguing that the countdown feature is an essential element, Rutherford highlights language in the specification of the '399 patent which clearly refers to such feature. "The microprocessor in the door-mounted control unit begins a countdown when the system trigger is operated to demand egress or access. Unlike the systems of the prior art, the security system of the present invention includes a mechanism to inform the individual who operated the trigger switch to demand egress or access just how long it will be until the door is unlocked." ('399 patent, col. 3, lines 31-37.) This is consistent

18

with that portion of claim 1 which provides, "means for providing an indication of the time remaining until said electronically operated door locking mechanism will go from said lock condition to said unlock condition." (Col. 10, lines 65-69.) Moreover, claim 19 appears to further enhance this argument, "a digital display exhibiting the number of seconds remaining until . . . ." (Col. 12, lines 41-43.) Therefore, the Court agrees that its construction of this phrase should include the countdown feature.

Turning next to the "light emitting" element suggested by Security Door, reference is made to a LED (light-emitting diode) display in several places in the specifications. In column 3, lines 48-49, it states, "[f]or example, a one-inch high, two digit, seven segment LED display may be utilized" (emphasis added). Also, in column 3, line 68 through column 4, line 2, the specification recites, "[t]he LED display may be used to indicate whether the system is armed or disarmed" (emphasis added). Similarly, in the preferred embodiment, references to a LED display appear to be couched in optional terms. Although the invention clearly contemplates a digital display of time (see claim 19 discussed above), the Court is not of the opinion that light emission is an essential feature of the corresponding structure. Accordingly, the Court will construe the phrase "means for providing an indication" as "a visual or audio output that provides a countdown of the time remaining until the door locks."

### IV. Conclusion

For the reasons stated above, the disputed terms are construed as follows:

19

1.    "Slot" means "narrow opening."

2.    "Projection" means "portion of the mode selector that fits into a slot in the holder."

3.    "Slotted head" means "a head containing one or more slots."

4.    "Means for selecting" means "a single mechanism that selects between two modes."

5.    "Means for selecting a mode of the electric strike" means "a mechanism that requires only a single movement to change modes, as by rotation or sliding a button."

6.    "Means for allowing" will be construed as "a mechanism that requires only a single movement to change modes, as by rotation or sliding a button."

7.    "Two-position mode selector" will also be construed as "a mechanism that requires only a single movement to change modes, as by rotation or sliding a button."

8.    (B)(1) "Cam" will be defined as "a cylinder or eccentric wheel having an irregular form such that its motion, usually rotary, gives to a part or parts in contact with it a specific rocking or reciprocating motion."

9.    (B)(2) "Means for biasing" will be defined as "a spring to push the mode selector to one of its two positions, notches, or ball-spring detents, or the like, engagable by the movable selector to hold the movable selector in one

20

of two end positions, and equivalents thereof."

10.   (C)(1) "Means for providing an indication" will be construed as "a visual or audio output that provides a countdown of the time remaining until the door locks."

An appropriate Order will accompany this Memorandum Opinion.


                                          /s/
                                    Henry E. Hudson
                                    United States District Judge


Date: Aug. 6, 2009
Richmond, VA