IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| RUTHERFORD CONTROLS INT'L CORP. ) | |
| (a Canadian corporation), *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.                                    ) | Civil Action No. 3:08CV369-HEH |
| ) | |
| ) | |
| ALARM CONTROLS CORP., *et al.*,   ) | |
| ) | |
| Defendants.                      ) | |

## MEMORANDUM OPINION
### (Motions for Summary Judgment)

This is a patent infringement action consisting of several consolidated cases.

Rutherford Controls International Corp., a Canadian corporation, and Rutherford Controls

International Corp., a Virginia corporation (collectively "Rutherford"), filed a complaint

for infringement against defendants Vanguard Security Engineering Corporation, Ltd.

("Vanguard") and Harco Enterprise Co. Ltd. ("Harco").[1] In response, Vanguard and

Harco filed counterclaims against Rutherford seeking declaratory judgment.

In a parallel action, Rutherford filed suit against Security Door Controls, Inc.

("Security Door") seeking both damages for infringement and declaratory judgment.

---

[1]The Complaint also named Defendants Alarm Controls Corporation and Fast Access
Security Corporation. These defendants were dismissed on September 5, 2008.

Security Door countered with a counterclaim first seeking declaratory judgment and later damages for infringement.[2]

The three patents-in-suit involve electronic door locking and unlocking mechanisms, commonly known as "electric strikes." Electric strikes are also known as electric door openers, electric releases, and electric release strikes. These devices are frequently used to control access to buildings or closed areas.

All parties have filed detailed memoranda of law in support of their respective motions and in opposition to those filed by their counterparts, along with voluminous exhibits. The Court heard argument of counsel on October 8, 2009 and announced its preliminary findings. This memorandum supplements those findings.

The specific claims at issue involve three patents: U.S. Patent Nos. 6,874,830 ("the '830 patent") and 7,144,053 ("the '053 patent") (collectively "the Rutherford patents," formally entitled "Electric Strike Assembly"), and U.S. Patent No. 5,429,399 ("the '399 patent," assigned to Security Door). With some structural variations, these patents teach electronic door locking and unlocking mechanisms.

The articulated object of the '830 and '053 inventions is to provide an improved electric strike, which among other features, provides rapid and easy selection between fail-safe (open) and fail-secure (locked) modes. A significant characteristic of both of

---

[2]On September 29, 2009, Security Door advised the Court that it had filed a stipulation of dismissal as to all claims relating to the '399 patent. However, Rutherford has not consented to the dismissal. The Court will therefore proceed to decide the pending motions pertaining to the '399 patent.

these patents is a design feature wherein the strike field is reversible, or in other words, can be switched from fail-safe and fail-secure with a single act operable from outside the housing.

In their complaint against Vanguard and Harco, Rutherford seeks damages for the defendants' sale and distribution of electronic door strikes that infringe the '830 and '053 patents. Vanguard and Harco have filed counterclaims requesting a declaratory judgment that patents '830 and '053 are both invalid and unenforceable.

In a separate but now consolidated action, Rutherford contends that Security Door has infringed the '830 and '053 patents by selling and distributing identically configured electronic door strikes. Rutherford further seeks a declaratory judgment of non-infringement of Security Door's '399 patent. The '399 patent relates to electromagnetic door locks that provide for delayed egress. The patent describes an invention that allows doors to be opened after a preset delay in time and covers a system wherein the exact period of delay remaining is made known through a countdown feature near the door. In a counterclaim that followed, Security Door seeks declaratory judgment that Rutherford's '830 and '053 patents are invalid and unenforceable, and a declaratory judgment that certain devices engineered from these patents infringe their '399 patent.

The '830 patent was issued by the United States Patent and Trademark Office on April 5, 2005. Rutherford (Canada) owns the '830 patent by assignment. The '053 patent was issued on December 5, 2006 and is also assigned to Rutherford (Canada). The '053

3

patent is a continuation of the '830 patent, both having essentially the same specifications with different claims.

The '399 patent, on which Rutherford seeks declaratory judgment of non-infringement, was issued by the Patent and Trademark Office on July 4, 1995. This patent has been assigned to Security Door. It describes a security system for use on doors which have an electrically operated door locking mechanism. In the preamble to the patent's abstract, it discloses a system "operative to provide a preset egress time delay following an effort to exit through the controlled door before actuating the door locking mechanism to unlock the door and allow egress. During the egress time delay, the system provides a visual input of the time remaining until the door locking mechanism will unlock the door to allow egress or access therethrough." ('399 patent, Abstract.) The preferred embodiment also utilizes a speech synthesizer to inform individuals of the delay.

The analytical framework for reviewing motions for summary judgment filed under Federal Rule of Civil Procedure 56(c) is well settled in both the Fourth and Federal Circuits.[3] Courts should only grant summary judgment when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

---

[3]The Federal Circuit applies its own law with respect to issues of substantive patent law and procedural issues pertaining to patent law. On non-patent issues, the Federal Circuit applies the law of the regional circuit. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1304 (Fed. Cir. 2009).

4

*Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P.

56(c)); *Haulbrook v. Michelin N.A., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). A genuine

issue exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986). In deciding a motion for summary judgment, the court must view the facts,

and reasonable inferences to be drawn from the facts, in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S. Ct. 1348, 1356 (1986).

The party seeking summary judgment has the initial burden of showing an absence

of a material facts in dispute. *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2554. To

defeat summary judgment, the nonmoving party must go beyond the mere pleadings and

provide affidavits, depositions, interrogatories, or other evidence to demonstrate that there

is in fact a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553. If a party, who bears the

burden of proof at trial, fails to come forward with sufficient evidence to establish the

existence of an element essential to that party's case, summary judgment should

ordinarily be granted. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

This methodology is applied in a similar fashion in patent infringement cases.

Typically in that context, summary judgment would be granted "when there is no genuine

issue of material fact as to whether correctly interpreted claims read upon the accused

device or method, literally or under the doctrine of equivalents." *Lifescan, Inc. v. Home*

5

*Diagnostics, Inc.*, 76 F.3d 358, 359 (Fed. Cir. 1996). To prevail, the party claiming

infringement must establish that the accused product meets every limitation recited in the

accused claim. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir.

2005).

It is well settled that consideration of a claim of patent infringement is a two-tiered

process. First the court must construe the claims. *Cook Biotech, Inc. v. Acell, Inc.*, 460

F.3d 1365, 1372 (Fed. Cir. 2006). Next, the court must compare the accused products to

the properly construed claims. *Id.* In the context of literal infringement, the moving party

must show that the accused device contains each limitation in the accused claim. *V-*

*Formation, Inc.*, 401 F.3d at 1312. Alternatively, infringement can be found under the

doctrine of equivalents when the accused product contains an equivalent for each

limitation that is not literally present in the accused product. *Abbott Labs. v. Novopharm*

*Ltd.*, 323 F.3d 1324, 1329 (Fed. Cir. 2003). The United States Court of Appeals for the

Federal Circuit has crafted a rudimentary test for application of the doctrine of

equivalents – whether the accused structure "performs substantially the same function, in

substantially the same way, to get substantially the same result" as the claimed invention.

*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822 (Fed. Cir. 1992); *see KSR Int'l Co. v.*

*Teleflex Inc.*, 550 U.S. 398, 417, 127 S. Ct. 1727, 1740 (2007). A finding of equivalency

is only permitted when the differences between the claimed invention and the accused

device are insubstantial; in other words, the accused infringer cannot achieve the same

result using a different arrangement of elements. *Lockheed Martin Corp. v. Space Systems/Loral Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S. Ct. 854, 856 (1950).

Turning to the specific grounds for summary judgment advanced by the parties, Plaintiff Rutherford seeks relief on three fronts. Rutherford maintains that there are no material issues genuinely in dispute and that they are entitled to judgment as a matter of law as to infringement by Vanguard's ST301 and Harco's AS900 door locking devices, with respect to claims 1, 3, 6, 7, 8, 10, and 12 of Rutherford's '830 patent. Rutherford also seeks summary declaratory judgment that claim 3 of its '830 patent is not invalid for either anticipation or obviousness, as contended by the defendants. Lastly, Rutherford also seeks summary judgment with respect to Security Door's counterclaim alleging that Rutherford's accused delayed egress product, commonly known as DE8310,[4] does not infringe Security Door's '399 patent.

Approaching the issues raised in inverse order, the Court will focus first on Rutherford's contention that its DE8310 product does not infringe the Security Door '399 patent as alleged in Security Door's counterclaim. In its response to Rutherford's motion for summary judgment of non-infringement and during oral argument, Security Door restated its disagreement with this Court's construction of certain claims featured in the

---

[4]The DE8310 is a delayed egress system that detects pressure once applied to outward swinging doors and temporarily delays the egress of the person exiting. According to Rutherford, the DE8310 comes with pre-recorded messages that provide exit instructions. (Rutherford's Mot. Summ. J. Mem. Supp. p. 1.)

'399 patent, but offered no other opposition to Rutherford's request for a declaration for non-infringement.

In this Court's Memorandum Opinion of Claim Construction issued on August 6, 2009, the phrase "means for providing an indication" was defined as "a visual or audio output that provides a countdown of the time remaining until the door locks." This definition was developed in light of specific language in the specification of the '399 patent and descriptive terms contained in claims 1 and 19. Specifically, in the specification of the '399 patent, the applicant declares that

> [t]he microprocessor in the door-mounted control unit begins a countdown when the system trigger is operated to demand egress or access. Unlike the systems of the prior art, the security system of the present invention includes a mechanism to inform the individual who operated the trigger switch to demand egress or access just how long it will be until the door is unlocked.

('399 patent, Col. 3, lines 31–37.) The significance of the countdown feature as an element of the phrase "means for providing an indication" is further supported by language contained in claim 1, which provides, "means for providing an indication of the time remaining until said electronically operated door will go from said locked condition to said unlocked condition." (Col. 10, lines 65–69.) Claim 19 of the '399 patent which provides, "a digital display exhibiting the number of seconds remaining until" further confirms the Court's construction. (Col. 12, lines 41–42.)

There appears to be no factual dispute that the Rutherford DE8310 does not contain this essential countdown feature. Security Door's own expert, John Pratt, even

8

conceded that the DE8310 lacks this feature. (Pratt Dep. Tr. 86:23–87:7.) The DE8310 device is described as having red and green lights on the panel which blink to indicate the door's status. It also emits either a pulsing or a steady sound, depending on the mode of the door's locking device.

Finding that the DE8310 lacks the essential countdown feature present in claim 1 of the '399 patent, the Court must conclude that Rutherford's product does not practice each and every element of the '399 patent and therefore does not infringe. *V-Formation, Inc.*, 401 F.3d at 1312. The Court will therefore grant summary judgment as to this aspect of Rutherford's motion.

In the second facet of its motion for summary judgment, Rutherford asserts that Defendants Vanguard and Harco have infringed claims 1, 3, 6, 7, 8, 10, and 12 of its '830 patent. Rutherford alleges that Vanguard and Harco have distributed field reversible electric strikes known as ST301 and AS900, respectively. These devices are structurally identical. The critical infringing feature of the ST301 and AS900 devices is the single movement mode selector.

The term "two-position mode selector" is contained in claims 1 and 12 of the '830 patent. After a thorough review of the claims, specifications, and preferred embodiments of the '830 patent, this Court construed the term "two-position mode selector" as "a mechanism that requires only a single movement to change modes, as by rotation or

9

sliding a button." The emerging issue is – what constitutes a single movement in this context.

Although Vanguard and Harco argue that the ST301 mechanism requires three movements for mode selection, Rutherford counters with the deposition testimony of Vanguard and Harco's own expert. Their expert, Mark Rhodes, described the mode selection mechanism of the ST301 as "basically . . . a push-and-turn operation." In his view, it was "basically one operation," but could be considered one or two steps, depending upon the individual perspective. (Rhodes Dep. Tr. 43:15–44:6.) Rutherford's expert, Randall Oxley, also concluded that the actual transition between modes required only a single movement, but perhaps multiple steps. (Oxley Decl. ¶ 4.) Both experts parsed their words carefully, drawing a distinction between a "movement" and a "step." On visual examination, the Court can envision how a reasonable trier of fact could adopt either position.

Whether the mode selector of the ST301 and its structural analog, the AS900, is "a mechanism that requires only a single movement to change modes, as by rotation or sliding a button" is a genuine issue of material fact in dispute, precluding an award of summary judgment. Since all other claims of the '830 patent on which Rutherford seeks summary judgment are dependent on claims 1 and 12, which contain the two-position mode selector language, at this stage, this Court need not reach the issue of whether the dependent claims are infringed by the ST301 or AS900.

10

The final portion of Rutherford's motion for summary judgment is a request that the Court find that its '830 patent is neither invalid over Chang, nor obvious when Chang is combined with Fuss, as Defendants Vanguard, Harco, and Security Door contend.

To bolster its position, Rutherford points out a number of distinctions between its '830 patent and the Chang '225 and '481 patents. Initially, Rutherford notes that the U.S. Patent Office was aware of the Chang patents when it issued the '830 patent to Rutherford. Rutherford highlights two significant structural distinctions between Chang and the '830 patent. Chang does not disclose a blocking element slidably arranged in the holder. The blocking element in Chang is located outside the holder. Furthermore, according to Rutherford, Chang does not teach a means for biasing the two-position mode selector, as required by claim 3 of the '830 patent.

All three defendants disagree with Rutherford's position with respect to the presence of a biasing mechanism in the Chang patent. The defendants argue that the last step in the Chang mode selection process involves the functional equivalent, namely tightening a screw. The defendants contend that the tightening of this second screw keeps the strike biased in the new position. There appears to be conflicting expert testimony as to whether the second screw could be interpreted as a means for biasing. The Court must therefore conclude that there is a genuine issue of material fact as to whether or not that claim 3 of the '830 patent is invalid for anticipation over the Chang references.

The second strand of Rutherford's final ground supporting summary judgment seeks a finding that its '830 patent is not invalid for obviousness over a combination of the Chang and Fuss references, as alleged by Security Door. Security Door maintains that the Fuss patent (U.S. Patent No. 5,788,295) discloses a mode selector that is arguably biased into one of two positions. Security Door asserts that it would have been obvious to one of ordinary skill in the art to engraft this feature to the Chang patent to yield the concepts taught by the '830 Rutherford patent. In addition, Vanguard and Harco advance a virtual mound of other patents which they contend render the '830 patent obvious in combination with Chang. Aside from references to technical portions of these patents, Vanguard and Harco provide very little to assist the lay judge in comparing the structural features at issue. As Rutherford appropriately notes, an adequate review and comparison of these materials would require the assistance of an experienced professional engineer. Therefore, based upon the current record, the Court is able to discern little beyond the fact that there appears to be significant material issues in dispute with respect to the effect of these prior art references, as well as the motivation for one skilled in the art to combine the references. Despite the absence of expert testimony to support the defendants' opposition, the state of the record precludes summary judgment on this ground. *See Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech.*, 542 F.3d 1363, 1373–76 (Fed. Cir. 2008).

12

Shifting next to the motions filed by Security Door, it seeks summary judgment of non-infringement of any of the asserted claims of either the '053 or '830 patents, either literally or under the doctrine of equivalents. Security Door contends that its accused product, the Security Door Control SDC Series 45 electric strike ("SDC Series 45") does not have the necessary single movement "two-position mode selector," "means for selecting," or "means for allowing." Additionally, Security Door asserts that its SDC Series 45 electric strike does not have a slot or projection, either literally or under the doctrine of equivalents, as required by the limitations disclosed in the '053 and '830 patents.

Central to the Court's analysis of Security Door's motion are independent claims 1 and 12 of the '830 patent which require the limitation "a two-position mode selector operable from outside the housing." As previously discussed, the Court has construed the term "two-position mode selector" by Memorandum Opinion dated August 6, 2009 to mean "a mechanism that requires only a single motion to change modes, as by rotation or sliding a button." Security Door argues that the mode selection feature of its SDC Series 45 electric strike requires multiple movements and is therefore clearly distinguishable from the mode selection mechanism in the '053 or '830 patents. On close examination, the SDC Series 45 mode selector appears to require several distinct movements to change modes. To perform this function, a person must first loosen a screw, slide the screw from one countersink hole to another, and then retighten the screw. In contrast, the '830 and

13

'053 patents teach "a very simple means for the installer to switch between modes, simply by rotating the selector." ('830 patent, Col. 5, lines 53–55.) The '830 and '053 patents do not require any loosening, tightening, or resetting of screws as necessary in the SDC Series 45. In fact, in distinguishing the '830 and '053 patents from the prior art, Rutherford highlighted the simplicity of the mode selection process. In drawing this distinction, Rutherford noted in the background section of both patents that switching between the fail-secure and fail-safe modes in Chang "is a tedious and tricky process, requiring proper alignment of holes, careful removal and replacement of one screw and careful loosening (without removal) of another screw." ('830 patent, Col. 1, lines 46–50.) ('053 patent, Col. 1, lines 48–52.) During the *Markman* hearing, Rutherford's expert, Randall Oxley, demonstrated this multi-step process on the GK300, which has a mode selector similar in structure to the SDC Series 45.

The SDC Series 45 has a mode selector configured in an hourglass shape. It essentially comprises two overlapping counterbores, or countersunk holes, in the housing that cooperate with the screw to select the particular mode for the strike. The design for the SDC Series 45 is based on U.S. Patent No. 7,540,542, issued by the U.S. Patent Office on June 2, 2009. The issuance of the '542 patent over the prior art, including the '830 and '053 patents, is entitled to considerable weight by a reviewing court. *See Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996).

14

In opposition, Rutherford draws the Court's attention to what it perceives to be the conflicting opinions of two experts as to the number of movements or steps required to change the modes in the SDC Series 45. In his declaration accompanying Security Door's motion for summary judgment, their expert, John Pratt, observed that "[t]he SDC Series 45 electric strike does not have a selector that can change modes using only a single movement. . . . [t]hese multiple movements include at least the movements of loosening a screw, sliding the screw from one countersunk hole to another, and tightening the screw." (Pratt Decl. ¶ 11.) Rutherford notes, however, that Pratt provided a more nuanced description of the mode selection process at his deposition. Pratt was steadfast that "there are three steps involved in order to change modes." (Pratt Dep. Tr. 80:1–4.) But Pratt acknowledged that the actual changing of the modes only occurs with the second step. (Pratt Dep. Tr. 80:5–8.) Rutherford relies on this testimony to support its argument that the Series 45 has a single movement mode selector. Rutherford's expert, Randall Oxley, adopts a similar opinion parsing the operative movement from the attendant steps. Oxley agrees that the process entails three movements, but only the second of the three actually changes the modes. (Oxley Dep. Tr. 104:5–16.)

To adopt the mode selection theory now advanced by Rutherford, it would require the Court to focus on a single intervening step in a continuum of movement. Although the experts may agree that an isolated step within a series of movements is the most critical in actuating the mode selector, it does not mean that other steps are not required to

15

complete the process. Moreover, under Rutherford's theory, at least a significant portion of the prior art in the electric strike field would be comprised of a single movement mode selector.

Apart from the opinions of experts, an examination of diagrams of the SDC Series 45 reveals to the lay eye that it does not have a selector that can change modes using only a single movement. The Court is mindful that the single movement mode selector is a key feature of the patentability of the '830 and '053 patents. In viewing the facts and inferences to be drawn in the light most favorable to Rutherford, the Court finds that there is no genuine issue of material fact with respect to the number of movements required for operation of the mode selector in the SDC Series 45. Furthermore, the Court concludes that the dissimilarity between the single movement mode selector characteristic of the '830 and '053 patents and the multiple movement mode selector in the SDC Series 45 electric strike is so evident, that no reasonable jury could find that exact limitation present in the accused device. *See V-Formation, Inc.*, 401 F.3d at 1310. Security Door's motion for summary judgment of non-infringement is therefore granted.

Lastly, the Court will examine the motions filed by Defendants Vanguard and Harco seeking summary judgment that Rutherford's '830 patent is invalid on both anticipation and obviousness grounds when measured against the prior art. On an alternative front, Vanguard also seeks a finding of non-infringement with respect to its two accused products. Vanguard contends that neither the ST301 nor the SDC Series 45

16

electric strike, allegedly distributed by Vanguard, have single movement mode selectors, a means for biasing, or a cam. Furthermore, Vanguard alleges that it does not make, sell, or use the SDC Series 45 or ST301, and that there is no admissible evidence to the contrary.

In order to prove that a claim is anticipated under 35 U.S.C. § 102(b), Harco and Vanguard must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim. *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002). Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The determinative question is whether "one of ordinary skill in the art would have been motivated to use the teachings of a prior art process, in its normal disclosed operation, to create a product that [he] claims in a subsequent patent, then such patent would [be] obvious over the former disclosed process." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (Fed. Cir. 2001). In more simple parlance, obviousness is a combination of familiar elements according to known methods that does no more than yield predictable results. *Sakraida v. Ag Pro Inc.*, 425 U.S. 273, 282, 96 S. Ct. 1532, 1537 (1976).

In their supporting memorandum, Vanguard and Harco discuss seven prior art references which form the predicate of their invalidity argument.[5] Harco and Vanguard

---

[5]Vanguard and Harco also offer a U.S. Patent Office communication dated September 30, 2009 conveying the results of an Ex-Parte Reexamination of the '830 patent. In a Non-Final Rejection, the examiner concluded that claims 1–3, 6–10, and 12 were subject to reexamination and that claims 1–3, 7–10 and 12 were rejected as invalid over prior art (Taiwanese Publication).

extract isolated features of each of these prior patents and compare them to elements of

the '830 and '053. As Rutherford notes in its response, Vanguard and Harco's

comparative analysis is couched in technical terms beyond the kin of the lay lawyer. The

comparative analysis is not accompanied by any type of expert opinion or technical

evaluation aside from the authoring lawyer's commentary. It is well settled that in order

to prove invalidity, the movant must demonstrate that the prior art discloses each and

every limitation of the patent at issue. *V-Formation, Inc.*, 401 F.3d at 1312. Despite a

diligent examination of all accompanying materials, neither the Court nor counsel for the

plaintiff have been able to perform the comparison necessary to determine if all elements

of the prior art conform, expressly or inherently, with each and every limitation of the

patents at issue. This is particularly true because the analysis would necessarily entail

invocation of the doctrine of equivalents with respect to some features of the allegedly

invalidating prior art. This would undoubtedly require some illumination from an expert

in the field, even in light of the recent Patent Office communication. The Court must

therefore conclude that with respect to this aspect of Vanguard and Harco's motion for

summary judgment, there are material issues genuinely in dispute.

The Court is faced with a similar quandary with respect to Vanguard and Harco's

invalidity by obviousness argument. Critical elements of the obviousness analysis require

proof of motivation by a person skilled in the art to combine key elements of prior

---

The examiner further found that claim 6 was patentable.

references and whether that process would yield predictable results. Although the Court acknowledges that expert testimony is not always required at the summary judgment stage to discern invalidity by obviousness, this is not such a case. In this case, much of the prior art has been reviewed by the U.S. Patent Office prior to issuing the '830 and '053 patents. Without the benefit of expert testimony in the immediate case, it is impossible to determine whether or not a person skilled in the art of electronic door strikes would be motivated to combine portions of the prior references cited by Vanguard and Harco. Accordingly, the Court finds that there is a material issue in dispute with respect to whether the '830 and the '053 patents are obvious over the prior art references.

Turning next to the infringement issues, Vanguard and Harco seek summary judgment of non-infringement as to the ST301 device and the SDC Series 45, both of which are allegedly distributed by Vanguard. The Court has already found that the SDC Series 45 does not infringe the '830 or '053 patents because the SDC Series 45 requires multiple movements to change modes.

The ST301, based on the sample provided to the Court, appears to have a mode selector activated by simply applying pressure and turning a screw from one position to another. A reasonable trier of fact could conclude that the simultaneous pressing and turning of the screw either constitutes a single movement consistent with the Court's construction with the term "two-position mode selector," namely "a mechanism that

19

requires only a single motion to change modes, as by rotation or sliding a button" or multiple movements.

Vanguard and Harco further contend, however, that the ST301 does not have a cam as that term was defined by the Court in its Claim Construction Memorandum Opinion. In that opinion, the Court defined the term "cam" as "a cylinder or eccentric wheel having an irregular form such that its motion, usually rotary, gives to a part or parts in contact with it a specific rocking or reciprocating motion." Rutherford counters that the lever arm feature of the ST301 is the functional equivalent of a cam and therefore infringes the '830 by the doctrine of equivalents. In order to successfully invoke the doctrine of equivalents, Rutherford must demonstrate that the differences between the cam in the '830 and the lever arm in the ST301 are insignificant. *Lockheed Martin Corp.*, 324 F.3d at 1320. It appears from the record, and a comparative review of the devices, that a reasonable trier of fact, as well as experts, could differ as to whether the mechanical differences between the lever arm of the ST301 and the cam of the '830 are insignificant. Therefore, finding that there is a material issue genuinely in dispute, this aspect of Vanguard and Harco's motion for summary judgment will be denied.

Finally, Vanguard denies that its has ever made, sold, or used the SDC Series 45 or ST301. In a declaration accompanying its motion for summary judgment, Li-Shih Liao ("Liao") represents that he invented and designed the ST301, but denies that either he or Vanguard have ever made, used, or sold the ST301. Moreover, Liao contends that

20

Vanguard has never had dealings with the products alleged in the Amended Complaint. Liao further states that a different company in China, unrelated to Vanguard Security Engineering Corp., Ltd., handled the making, using, and selling of this product. Rutherford defends this allegation by presenting what appears to be a page from the Vanguard catalog featuring the ST301 Series dual mode, monitoring, electric strike.[6] Vanguard argues that the inclusion of the ST301 Series in Vanguard's catalog is sufficient evidence of Vanguard's offer of the product for sale to create a triable issue. In order to recover damages for infringement, Rutherford must show that Vanguard "used, sold, or offered the infringing product for sale in the United States during the term of the patent." *Walker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008) (quotation omitted). Although the evidence on this issue appears very close, the excerpt from Vanguard's catalog presented as an exhibit by Rutherford is sufficient to clear the bar, albeit just barely. At trial, Rutherford will have the burden of proving that Vanguard offered the ST301 for sale in the U.S. market by a preponderance of the evidence.

Therefore, in the final analysis, Security Door's motion for summary judgment of non-infringement is granted. Counts 1 and 2 of Rutherford's complaint against Security Door's alleged infringement of the '830 and '053 patents, respectively, are dismissed. Security Door's counterclaim against Rutherford seeking declaratory judgment that patents '830 and '053 are invalid and unenforceable is dismissed as moot. Vanguard and

---

[6]During oral argument, counsel for Rutherford represented to the Court that employees of former Defendant Alarm Controls Corporation obtained the AS900 from Harco.

Harco's joint motions for summary judgment on the issue of invalidity and for summary judgment of non-infringement of any claims of the '053 and '830 patents, are denied. Rutherford's motion for summary judgment that its DE8310 electric strike device does not infringe Security Door's '399 patent, as alleged in Security Door's counterclaim, is granted. Security Door's amended counterclaim against Rutherford alleging infringement of their '399 patent is therefore dismissed. Rutherford's motion for summary judgment that the Vanguard ST301 and Harco AS900 (electric strike devices) infringe claims 1, 3, 6, 7, 8, 10, and 12 of the Rutherford '830 patent is denied. Lastly, Rutherford's motion for summary judgment that claim 3 of the '830 patent is not invalid in view of prior art is also denied at this stage of the proceedings.

An appropriate Order will accompany this Memorandum Opinion.


                                             /s/
                                    _____
                                         Henry E. Hudson
                                         United States District Judge

Date: Oct. 23, 2009
Richmond, VA


                                      22